IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VERNON McCALL            *
                         *
v.                       *       Civil No. JKS 13-1485
                         *
WASHINGTON METROPOLITAN   *
AREA TRANSIT AUTHORITY   *
                         *

**MEMORANDUM OPINION**

Presently pending is Defendant Washington Metropolitan Area Transit Authority's (WMATA) motion for summary judgment on Plaintiff's one count complaint for breach of contract. ECF Nos. 1, 25. The issues have been fully briefed and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, Defendant's motion will be granted.

**I.     Standard of Review.**

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *Emmett*, 532 F.3d at 297. "A party who bears the burden of proof on a particular claim must factually support each element of his or her claim." *Billco Int'l, Inc. v. Charles Prods.*, 776 F. Supp. 2d 105, 110 (D. Md. 2011) (citation omitted). "A complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id.* "Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial." *Id.* "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307,

314 (4th Cir. 2003).  "There must be sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."  *Billco*, 776 F. Supp. 2d at 110 (citation and internal quotation marks omitted).

## II.     Background.

The following facts are either undisputed or are construed in the light most favorable to Plaintiff.  Plaintiff accepted a job offer from WMATA on September 24, 2012.  ECF No. 1 at 2.  On that date, Plaintiff signed correspondence received from Myron Vines, a Human Resources Generalist at WMATA, affirming the following statement: "I accept this offer of employment and expect to report to work on 10/1/2012."  ECF No. 1-3.  Plaintiff also attests that on the same day, he "was told by WMATA's agents . . . to resign from [my] position with the State Highway Administration, so that I could start working, with [WMATA], on October 1, 2012," ECF No. 26 at 17, and he submitted a resignation letter to his former employer, the State Highway Administration.  *Id.* at 15.  Two days later, Myron Vines sent Plaintiff an email informing him of an upcoming orientation for new employees and details concerning the appropriate uniform associated with the job, and ended the email with "[t]hanks and again welcome aboard."  ECF No. 1-4 at 1, 2.  Mr. Vines also informed Plaintiff, in an email, that his "background is clear and all we're doing is waiting for medical."  ECF No. 25-4 at 3.

Plaintiff had participated in a WMATA drug screening examination on August 17, 2012.  ECF Nos. 1-1, 1-2.  The result of the urine analysis was "negative-dilute."[1]  ECF No. 25-5.  On September 28, 2012, a WMATA representative, Mr. Moore, called Plaintiff to inform him that he would not be able to work for WMATA as a result of this "negative-dilute" test result.  ECF No. 26 at 17; ECF No. 25-4 at 6.

---

[1] "Dilute samples lack a sufficient amount of [creatinine] in the urine, or specific gravity."  *EEOC v. GKN Driveline N. Am., Inc.*, Case No. 9-654, 2010 U.S. Dist. LEXIS 129815, at *4 n.5 (M.D.N.C. Dec. 8, 2010).  "The dilute tests automatically register as negative, because the specimen lacks a sufficient concentration of urine."  *Id.*

**III. Discussion.**

Plaintiff alleges that WMATA breached his employment contract and seeks $100,000 in compensatory damages, consisting of lost wages and damages resulting from the sale of his car and truck to pay his bills. ECF No. 1 at 3; ECF No. 26 at 17. Although the complaint contains only a breach of contract claim, both parties appear to interpret it as also making a detrimental reliance claim. The court's analysis follows this understanding.

**A. Breach of Contract.**

WMATA argues that Plaintiff's claim fails because the employment contract was contingent on Plaintiff's successful completion of a drug test. ECF No. 25 at 6-7. It is undisputed that Plaintiff's drug test was "negative-dilute," *see id.* and ECF No. 26 at 16, and WMATA contends that it may choose not to hire based upon this result, citing 49 C.F.R. § 40.197. Plaintiff does not dispute that WMATA cited his drug test result as the reason for withdrawing the offer of employment. ECF No. 25-4 at 6.

Section 40.197 directs the employer to take certain actions in response to a negative-dilute drug test. It does not state that an employer may reject a job applicant based upon a negative-dilute test finding, but it does indicate that negative-dilute is not a passing result.[2] Plaintiff acknowledges that Mr. Vines' email informing him that WMATA was "waiting for medical" constituted part of his employment contract, ECF No. 25-4 at 4, and acknowledges that passing the drug test was a condition of WMATA's employment offer. ECF No. 1 at 2. No

---

[2] Several sections of Title 49 contemplate a re-collection in the event of a negative-dilute finding. *See* 49 C.F.R. 40.155(a)(c) ("When you report a dilute specimen to the [Designated Employer Representative (DER)], you must explain to the DER the employer's obligations and choices under § 40.197, to include the requirement for an immediate recollection under direct observation if the creatinine concentration of a negative-dilute specimen was greater than or equal to 2mg/dL but less than or equal to 5mg/dL."); 49 C.F.R. § 40.67(a)(3) ("As an employer, you must direct an immediate collection under direct observation with no advance notice to the employee, if . . . The laboratory reported to the MRO that the specimen was negative-dilute with a creatinine concentration greater than or equal to 2 mg/dL but less than or equal to 5 mg/dL, and the MRO reported the specimen to you as negative-dilute and that a second collection must take place under direct observation."); *see also Harrington v. Aggregate Industries-Northeast Region, Inc.*, 668 F.3d 25, 29 (1st Cir. Mass. 2012) ("Bradley related that the appellant's urine sample had yielded an inconclusive result ('negative dilute') and that he needed to submit to a second drug test.").

factfinder could conclude that WMATA was not entitled to withdraw the employment offer because Plaintiff did not pass the drug test. WMATA is accordingly entitled to summary judgment.

WMATA is entitled to summary judgment on the alternative basis that the employment offer was of indefinite duration and thus was an offer for at-will employment. "The employment at will doctrine provides that, an employment contract of indefinite duration . . . can be legally terminated at the pleasure of either party at any time without giving rise to a cause of action for breach of contract."[3] *Parks v. Alpharma, Inc.*, 421 Md. 59, 73 (2011). "In Maryland, employment is normally at will, and it may be terminated by the employer or the employee without any reason and at any time, unless there is a contract, express or implied, that limits the termination right of either the employee or the employer." *Deutsch v. Chesapeake Ctr.*, 27 F. Supp. 2d 642, 644 (D. Md. 1998). "It is for the Court . . . to interpret the materials relied upon by the employee as creating a contractual limitation on ordinary at-will termination rights to determine whether, in fact, they do so." *Id.*

Plaintiff does not dispute that he was offered at-will employment. Rather, he argues that the at-will doctrine does not apply because WMATA waited until after Plaintiff resigned from his former job to inform Plaintiff that the job offer was withdrawn. ECF No. 26 at 6-7. Plaintiff asserts that "[i]t is a factual issue, for the jury, to determine whether the Defendant should have told McCall that they were not going to hire him, prior to him resigning from his then current employment on September 24, 2012, and whether McCall's reliance, upon WMATA's promise of employment, breached their contract with him, and whether he's entitled to be compensated for the damages that resulted from WMATA's actions." *Id.* at 7.

---

[3] In some cases, a cause of action in tort may arise for wrongful discharge when the motivation for the discharge violates a clear mandate of public policy, *see Symeonidis v. Paxton Capital Group, Inc.*, 220 F. Supp. 2d 478, 483 (D. Md. 2002), but no such facts are alleged here.

This argument confuses breach of contract with detrimental reliance. WMATA had no *contractual* duty to inform Plaintiff of its decision to withdraw the employment offer at any particular time. Based on this contract, Plaintiff left his prior job at his own risk, and WMATA was not obligated to employ Plaintiff, or inform him that it would not employ him, before that resignation. Because Plaintiff was an at-will employee, WMATA was free to terminate his employment "at any time without giving rise to a cause of action for breach of contract." *Parks*, 421 Md. at 73.

### B. Detrimental Reliance.

Although Plaintiff does not bring a count for detrimental reliance, the court will address it briefly because both parties have argued it. WMATA claims immunity from actions for detrimental reliance under the WMATA Compact. *See* MD. CODE ANN. TRANSP. § 10-204 (1977, 2008 Repl. Vol., 2013 Suppl.). "WMATA was created as the result of a compact signed by Maryland, Virginia, and the District of Columbia and consented to by Congress." *Burkhart v. Washington Metro. Area Transit Auth.*, 112 F.3d 1207, 1216 (D.C. Cir. 1997) (citing Pub. L. No.89–774, 80 Stat. 1324 (1966)). "In signing the WMATA Compact, Maryland, Virginia, and the District of Columbia conferred upon WMATA their respective sovereign immunities." *Beebe v. Washington Metro. Area Transit Auth.*, 129 F.3d 1283, 1287 (D.C. Cir. 1997) (citations omitted). Section 80 of the Compact carves out a few exceptions to WMATA's sovereign immunity:

> The Authority shall be liable for its contracts and for its torts and those of its directors, officers, employees and agents committed *in the conduct of any proprietary function*, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring *in the performance of a governmental function*.

MD. CODE ANN. TRANSP. § 10-204 (80) (emphasis added). Here, however, the court need not determine whether the relevant conduct is governmental or proprietary as "WMATA is immune

5

from [a] promissory estoppel claim[4] . . . [because] the Compact does not expressly waive WMATA's sovereign immunity for that particular cause of action." *Martin v. Washington Metro. Area Transit Auth.*, 273 F. Supp. 2d 114, 119 (D.D.C. 2003). Any "waiver of sovereign immunity must be clear and unequivocal," *id.*, and "Section 80's waiver only denotes WMATA's liability for its contracts and torts occurring in the performance of a non-governmental function; it does not mention promissory estoppel, which is a distinct legal theory." *Id.* Thus, although Plaintiff may well be justifiably grieved by WMATA's conduct, WMATA is immune from any detrimental reliance claim.

## IV.     Conclusion.

WMATA's motion for summary judgment is granted. A separate order shall be entered.

Date: April 29, 2014                                                          /s/
                                                                    JILLYN K. SCHULZE
                                                                    United States Magistrate Judge

---

[4] The Maryland Court of Appeals has expressed its preference for the phrase "detrimental reliance" rather than the traditional nomenclature of "promissory estoppel," believing that the former "more clearly expresses the concept intended." *Pavel Enterprises, Inc. v. A.S. Johnson Co., Inc.*, 342 Md. 143, 146 n.1 (1996).